## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VESTINA ROSS,<br>*on behalf of herself and all others*<br>*similarly situated,*<br><br>     Plaintiff,<br><br>v.<br><br>CHEX SYSTEMS, INC.,<br><br>     Defendant. | Case No.:<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

Vestina Ross ("Plaintiff" or "Ms. Ross") on behalf of herself and all similarly situated individuals, brings this case as a class action based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, against Chex Systems, Inc. ("Defendant Chex Systems" or "Chex Systems") and states as follows:

### INTRODUCTION

1. Plaintiff, an identity theft victim, brings this action against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq.

2. More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] Federal Law requires that each

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests. This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can, and do, sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to

a consumer.

5.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.    One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.    The preservation of one's good name and reputation is also at the heart

of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.    The FCRA also requires CRAs to conduct a reasonable reinvestigation

to determine whether information disputed by consumers is inaccurate and record

the current status of the disputed information, or delete the disputed information,

before the end of the 30-day period beginning on the date on which the CRA receives

the notice of dispute from the consumer. This mandate exists to ensure that consumer

disputes are handled in a timely manner and that inaccurate information contained

within a consumer's credit report is corrected and/or deleted so as to not prevent said

consumer from benefiting from his or her credit and obtaining new credit.

11.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

12.    The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.    Plaintiff's claims arise out of the Defendant's plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that she was a victim of identity theft and that she did not owe any money to third-party Bank of America.

14.    This action seeks class relief for all consumers that have been subjected to Chex System's illegal conduct in failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

15.    As part of this action, Plaintiff seeks actual, statutory, punitive

damages, costs, and attorneys' fees from Defendant for their willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

## JURISDICTION AND VENUE

16.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges a violation of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

## PARTIES

18.    Vestina Ross ("Plaintiff" or "Ms. Ross") is a natural person residing in Snellville, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

19.    Defendant Chex Systems is a foreign corporation organized under the laws of Minnesota with a principal place of business located in Jacksonville, FL. Chex Systems is authorized to do business in the State of Georgia, including within this District, and has a Georgia registered agent. Chex Systems can be served through

its registered agent, CT Corporation System, located at 289 S Culver St., Lawrenceville, GA 30046.

20. Chex Systems is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

21. Chex Systems is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

22. The information that Chex Systems collects, maintains, and sells includes confidential details about the consumer's bank transactions, bank accounts, which also allows its customers to learn income, finances, deposit account histories, address histories, application histories, consumer reporting review histories, and employment histories of 245 million Americans. Chex Systems also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

23. Chex Systems collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Chex Systems collects and maintains information about them. Not only that, but consumers cannot remove information that Chex Systems collects and maintains about them from the Chex Systems database. Further, Chex Systems sells that information about consumers for its unilateral profit, none of which is shared

with the Plaintiff, who is the subject of the very data that Chex Systems sold.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

24.    The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

25.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

26.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

27.    Congress also recognized that CRAs such as Chex Systems "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to ensure that consumer reporting agencies exercise

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

28.    For that reason, Congress ensured that the FCRA also provides special protection for victims of identity theft.

29.    The first form of protection is the "block." When a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

> a.    Appropriate proof of the identity of the consumer;
>
> b.    A copy of an identity theft report;
>
> c.    The identification of such information by the consumer; and,
>
> d.    A statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

30.    The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

31.    Specifically, upon request of the consumer, a CRA must place an "initial fraud alert" in the file of that consumer and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request. Unless one year has passed, the CRA can only remove the alert if the

consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

32.    The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the Defendant here.

33.    A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2] 15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

34.    Once placed, a security freeze does not expire.  A CRA can remove a security freeze **only** at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

35.    The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may only release

---

[2] Certain statutorily exempt entities can still request and receive a frozen report.  *See* 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may **only** release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c). No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose. 15 U.S.C. § 1681e(a).

36.    To that end, the FCRA imposes the following duty on consumer reporting agencies: consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. 15 U.S.C. § 1681i.

37.    The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the Defendant, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### A.    Plaintiff is the Victim of Fraud

38.    Throughout 2021 and 2022, Plaintiff was seriously ill due to COVID-19 and required in-home care.

39.    Plaintiff's caregiver had access to her banking information and in or

before March of 2022, the caregiver deposited a fraudulent check on an existing account that belonged to the Plaintiff.

40.    Bank of America did not accept the check and thereafter closed the account allegedly because the "risk department" decided to close the account as a result of fraudulent activity through the account. Once Plaintiff was healthy, she had contacted Bank of America to request that the account be closed. Bank of America assured Plaintiff that the account was closed, and that Plaintiff did not owe Bank of America any money associated with the fraudulent check. Upon information and belief, Defendant Chex Systems treated Plaintiff the same way that it treated all consumers who disputed the accuracy of their consumer reports during the class period.

## B.    Plaintiff Obtains a Copy of her August 2024 Chex Systems Report

41.    On or about August 8, 2024, worried about possible inaccurate reporting, Plaintiff obtained a copy of her Chex Systems report.

42.    Plaintiff was shocked and upset to see that Defendant was reporting inaccurate information that made it falsely appear that the Bank of America account had been closed due to fraudulent activity committed by her rather than the third-party identity thief.

43.    Specifically, Defendant was reporting the following inaccurate information:

Source of information: Bank of America
Reported for: Suspected Fraud Activity
Reported Name: Vestina Yalanda Ross
Date of Closure: March 3, 2022
Account Number: XXXXXXX1164
Closure Status: Settled in Full

## C.    Plaintiff Disputes with Defendant September 2024

44.    On or about September 16, 2024, Plaintiff mailed a dispute to Chex Systems.

45.    Plaintiff disputed the Bank of America account with Defendant as the product of fraud and identity theft by sending a detailed written dispute through the U.S. Postal Service to Chex Systems.

46.    Plaintiff provided sufficient information to identify her consumer file and sufficient information to support her dispute.

47.    Plaintiff requested that the identity theft information be blocked from her credit file and her report be corrected.

48.    Plaintiff's report also indicates that the account was "settled in full." This is not true. Plaintiff requested that the fraudulent deposit be reversed and that her account be closed.  She owed no money to Bank of America at the time the account was closed.

49.    By indicating the account was "settled in full," Defendant indicates to Plaintiff's creditors that there was a debt that Plaintiff owed that was settled by compromise, often indicating for less than the full amount.

50.    Plaintiff owed Bank of America nothing.

**D.    Defendant's Unreasonable Dispute Reinvestigation September 2024**

51.    By letter dated September 25, 2024, Chex Systems sent Plaintiff notification that it had received her dispute and that it had initiated a review of her file.  Upon information and belief, Defendant (a) did not initiate a reinvestigation, (b) did not send the dispute and all documentation to the furnisher; and (3) never sent a dispute response to Plaintiff in the mail indicating resolution of this dispute.

52.    Defendant failed to adequately review all of the information provided to it by Plaintiff.

53.    Defendant failed to reinvestigate Plaintiff's September 2024 dispute and failed to block the identity theft information.

54.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**E.    The Credit Bureau Defendant's Method for Considering Consumer Credit Report Disputes**

55.    The consumer reporting industry has constructed a method of reinvestigating consumer report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

56.    Most of the consumer reporting industry utilizes an all-electronic system using alpha-numeric codes to transmit disputes between furnishers and

14

consumer reporting agencies.

57.    Upon information and belief, Chex Systems utilizes a similar process for sending the consumer disputes to the furnisher of the consumer information in order to trigger the obligation for the furnisher to promptly investigate the consumer's dispute.

**F.    Plaintiff's Second Dispute to Defendant October 2024**

58.    Upset that her dispute was not taken seriously, Plaintiff submitted a second dispute to Defendant via mail on or about October 21, 2024.

59.    Plaintiff again disputed the Bank of America account. Specifically, Plaintiff disputed that the Bank of America account fraud notation incorrectly made it appear as if she were the fraudster rather than the identity thief and was thus patently false, or at the very least misleading in such a way as to be inaccurate.

60.    Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

61.    Plaintiff requested that the identity theft information be blocked from her credit file.

62.    Plaintiff also included the FTC identity theft affidavit that she had completed through the https://www.identitytheft.gov/ website. Defendant received the dispute on October 31, 2024.

//

**G.    Defendant's Unreasonable Dispute Reinvestigation**

63.    On or about November 4, 2024, Defendant sent Plaintiff a letter stating that Plaintiff's dispute did not support her claim for identity theft because it was not signed by a law enforcement official.

64.    A signature by a law enforcement official is **not** a legal requirement in order for Defendant to reinvestigate consumer disputes and send the dispute and all information to the furnisher.

65.    The Defendant is specifically on notice from numerous lawsuits including class actions, that it may not condition commencing its reinvestigation or transmitting the disputed information to the furnisher upon arbitrary conditions such as acquiring a report signed by law enforcement.

66.    Consumers have no control over law enforcement, whether they will take or sign a report, conduct an investigation or take any other action.

67.    The federal government has established a uniform identity theft report available to all consumers online, which is sufficient to serve as evidence of a identity theft to trigger a reinvestigation. https://www.identitytheft.gov/

68.    The Defendant is specifically on notice from the Consumer Financial Protection Bureau (CFPB) that it may not condition a reasonable reinvestigation by requiring consumers to submit specific items of information such as a police report signed by law enforcement.

https://www.consumerfinance.gov/compliance/circulars/consumer-financial-protection-circular-2022-07-reasonable-investigation-of-consumer-reporting-disputes/

69.    By shifting the investigation responsibility to the consumer, and by conditioning the investigation on specialized documentation not required by the FCRA, the Defendant acted in reckless or conscious disregard of the Plaintiff's consumer rights.

70.    Because Defendant communicated this illegal requirement to the Plaintiff in a form letter, the Defendant likely sent the same or similar illegal form letter to all identity theft victims that disputed inaccurate information on their Chex Systems report.

71.    On or about November 20, 2024, Defendant responded to Plaintiff's dispute and verified their reporting as accurate.

72.    Defendant violated 15 U.S.C. § 1681i by refusing to commence a reasonable reinvestigation of the disputed information, failing to review all relevant information available to it, and refusing to recognize that the disputed charges were the product of identity theft unless the consumer supplied a police report signed by a law enforcement officer.

73.    If Defendant had reinvestigated Plaintiff's dispute, the information would have been removed from Plaintiff's report.

## PLAINTIFF'S INJURIES AND RESULTING DAMAGES

74.    Plaintiff did exactly what she should have done upon realizing she was the victim of identity theft.

75.    Plaintiff disputed directly with Defendant on multiple occasions and explained that the Bank of America account had been compromised due to fraudulent conduct by a third party and that she was the victim of identity theft.

76.    Plaintiff filed an FTC Identity Theft Affidavit.

77.    Plaintiff disputed with the Defendant multiple times throughout 2024.

78.    Plaintiff immediately identified herself as an identity theft victim and requested that the Defendant block the account information that was the product of identity theft.

79.    The Defendant never blocked or deleted the Bank of America debt that was the product identity theft despite Plaintiff's multiple disputes.

80.    Instead, the Defendant repeatedly disregarded Plaintiff's credible disputes, responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

81.    Further, the Defendant imposed extraordinary and false requirements, not required by law and expressly prohibited by the FCRA and agency guidance, in order for Defendant to reinvestigate Plaintiff's dispute.

82.    The Defendant understands it is often the case that an identity thief's

18

activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

83.    Despite Plaintiff's multiple disputes to Defendant that the Bank of America account debt was the product of fraud, and she was a victim of identity theft, Defendant hardly wavered in their refusal to remove the same.

84.    As a direct result of Defendant's ardent refusal to remove the Bank of America account debt, which was a product of identity theft, Defendant has continued to saddle Plaintiff with a consumer report that shows her as a fraudster but that was actually the product of identity theft.

85.    Due to Defendant's ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff has been forced to pause any major financial transactions in her life.

86.    Specifically, Plaintiff has a business and wanted to use her credit union's business products, such as lines of credit and bank accounts, but has not applied for any because she believes she will be denied as a direct result of Defendant's inaccurate reporting.

87.    Plaintiff decided not to apply for anything because she was scared that she would be denied in her application.

88.    Furthermore, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

89.    Further, and due to Defendant's inexplicable refusal to remove a fraudulent notation and apparent settlement notation from an identity theft victim's consumer file, Plaintiff spent hours disputing with Defendant.

90.    Defendant's conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendant would ever properly reinvestigate her disputes.

91.    At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

92.    At all times pertinent hereto, the conduct of Defendant, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

93.    Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendant, Plaintiff feels a surge of panic each time she receives another communication from Defendant. Her ongoing stress and anxiety regarding the situation has affected her and her relationships negatively.

94.    Credit Reporting Agencies ("CRAs") have a long history of

disregarding the credit reporting rights of identity theft victims under the FCRA.  For example, in the very similar matter of *April Hendrix vs. Equifax, et. al.*, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

95.    The *Hendrix* suit put Defendant on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

96.    The Defendant has had years of notice in the form of federal lawsuits, despite it all, Defendant did not take any better steps to protect the Plaintiff here.

97.    The respective internal policies and procedures of Defendant do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the Defendant's respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

98.    As a standard practice, Defendant does not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the

21

response of the data furnishers despite numerous court decisions admonishing this practice.  See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

99.    Defendant is aware of the shortcomings of their respective procedures and intentionally chooses not to comply with the FCRA to lower their costs. Accordingly, the Defendant's violations of the FCRA are willful.

100.    The Defendant's policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff and the putative as described in this complaint.

101.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered the injury of being deprived of a reasonable reinvestigation by Chex

Systems and investigation by Bank of America, thus foreclosing any ability to remedy the inaccuracies from continuing to be reported to potential lenders and banks.

102.   Although Plaintiff is not seeking individual damages, she also suffered the loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an debt that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove a debt that was the product of identity theft.

103.   Additionally, Plaintiff suffers interference with daily activities, and physical injuries resulting from emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendant.

104.   Although the Plaintiff has suffered individualized injuries that resulted in individual damages, she is choosing to seek only statutory and punitive damages on behalf of herself and the putative class.  However, should a statutory damages class not be certified, she will seek issue certification in the alternative.

## CLASS ALLEGATIONS

105.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff brings this action for herself and on behalf of the following class:

106.    All Natural persons in the United States who (a)  made a dispute to Chex Systems regarding  inaccuracies on their consumer report, (b) within the two-year period preceding the filing of this action and through class certification, and (c) to whom Chex Systems responded by refusing promptly reinvestigate unless the consumer provided additional documentation "signed by a law enforcement officer."

107.    Numerosity: Fed. R. Civ. P. 23(a)(1).  Defendant operates a large consumer reporting agency that holds data on over 300 million consumers and is used by about 80% of banks in the United States. Because of Defendant's size, number of customers to whom it sells consumer reports, and millions of consumers about whom it collects, maintains and sells consumer information, the number of class members likely exceeds 50 individuals. Therefore, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant, including email addresses, phone numbers, and postal addresses. The class members may be notified of the pendency of this action through mail and/or email.

108.    Common Questions of Law or Fact: Fed. R. Civ. P. 23(a)(2) &

23(b)(3). Common questions of both law and fact exist as to all members of each putative class. The common factual and legal issues predominate over any potential individual issues. The questions that predominate over questions affecting only individual class members include but are not limited to: (a) whether Chex Systems refused to or delayed reinvestigation of the disputes of Plaintiff and each putative class member as required by 15 U.S.C. § 1681i ; (b) because the document submitted had not been signed by a law enforcement officer; (c) whether Plaintiff's dispute was bona fide; (d) whether Defendants failed to promptly transmit the dispute to the furnisher of such disputed information, (e) whether the Defendant's failed to promptly commence a reinvestigation; (f) whether the Defendant's reading of their FCRA reinvestigation obligations was objectively reasonable; and (g) whether Defendant's violations were negligent, reckless, knowing or intentionally committed in disregard for the rights of the Plaintiff and putative class members; (h) whether the Defendant's interpretation of the FCRA placed the Plaintiff and putative class members at greater risk for a violation of their FCRA rights by requiring a document signed by law enforcement to trigger a reinvestigation; (i) whether Defendant's conduct was applied to all members of the class .

109.   Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical

to the putative class members because each and every class member who disputed the accuracy of information in their Chex Systems report received the letter attached as Ex. 1, and thus were deprived of a prompt reinvestigation as well as an investigation by the furnisher.

110.    Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Both Plaintiff and her counsel are adequate to represent the interests of the class. Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members. Plaintiff has retained experienced counsel who is competent in both class action litigation and the Fair Credit Reporting Act. Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

111.    Superiority and Predominance. Fed. R. Civ. P 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be next to impossible for all class members to find a lawyer and afford individual litigation. Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts. By contrast, the class action device will result in substantial benefits to the litigants and efficiency for the Court by allowing the Court

to resolve numerous individual claims based on a single set of proofs.

<u>COUNT I</u>
**Violation of 15 U.S.C. § 1681i**
**Class Claim for Failure to Perform a Reasonable Reinvestigation**

112.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

113.   The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. *Id.*

114.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

115.   On numerous occasions in 2024, Plaintiff disputed the inaccurate information with Defendant and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the debt associated with the closed Bank of America account that was the product of identity theft which was a very stressful situation for the Plaintiff.

116.   Plaintiff disputed the identity theft information to Defendant several

times to no avail.

117.   On at least one occasion, Plaintiff supported her dispute with a copy of her FTC Affidavit.

118.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

119.   Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Defendant, repeatedly.

120.   Defendant's repeated refusals to delete the disputed information provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

121.   Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

122.   As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory mortgage account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory mortgage account that was the product of identity theft.

123.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendant.

124.   Defendant's conduct, actions, and inactions was willful, rendering the Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Violation of 15 U.S.C. 1681i(a)(2)
### Class Claim for failure to Forward the Plaintiff's Dispute to Furnisher
### Against Chex Systems

126.   Plaintiff relies on the foregoing factual allegations that form the basis of the complaint against Defendant for violation of their duties to promptly forward the Plaintiff's dispute and all relevant information to the furnisher of the inaccurate information.

127.   Defendant was required to treat the Plaintiff's dispute as a bona fide dispute and promptly notify the furnisher of the dispute and all relevant information within five business days.

128.   Instead, Defendant responded to the Plaintiff that she needed to send a document signed by a law enforcement official in order to properly process her identity theft dispute.

129.   Defendant knowingly or recklessly implemented and followed the procedure to delay or deny the Plaintiff's right to have the furnisher of the disputed information conduct a reasonable investigation in order to save money for itself.

130.   Defendant was on actual notice that their policy and procedure violated the FCRA yet chose to implement the illegal policy anyway.

131.   Defendant's conduct injured the Plaintiff and the putative class by depriving them of their right to a prompt, reasonable investigation by the furnisher.

132.   Defendant's conduct was willful because it was in direct contravention

of the express requirements of the FCRA, as well as FTC and CFPB guidance.

133.    Defendant is liable to the Plaintiff and putative class for statutory damages of between $100-1,000 for each occasion on which Defendant failed to promptly forward the Plaintiff and class members disputes to the furnisher of the disputed information.

134.    Defendants are liable for punitive damages, which are uncapped, for their willful violations.

135.    In the alternative, Defendants are liable to Plaintiff and the putative class for its negligent violations of the statute, entitling them to actual damages.

136.    Defendant is liable to the Plaintiff and the putative class for reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff and the putative class members demand that this Court enter judgment against Defendant Chex Systems, for the following:

a)    Certifying the Class as described above pursuant to Fed. R. Civ. P.23(b)(3);

b)    Declaration that the FCRA rights were violated by Defendant;

c)    Judgment for statutory and punitive damages for Defendant's willful violations of the FCRA;

d)      Judgment for reasonable attorneys' fees and costs, pre-judgment and

post-judgment interest at the legal rate; and

e)      Such other relief the Court deems just, equitable, and proper.

f)      Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby

demands a trial by jury of all issues so triable.


Dated: May 13, 2025,                    */s/ Jenna Dakroub*
                                        Jenna Dakroub, GA #385021
                                        **CONSUMER JUSTICE LAW FIRM**
                                        260 Peachtree Street NW, Suite 2200
                                        Atlanta, GA 30303
                                        T: (602) 807-1525
                                        E: jdakroub@consumerjustice.com

                                        **CONSUMER JUSTICE LAW FIRM**
                                        8095 N. 85th Way
                                        Scottsdale, AZ 85258

                                        *Attorneys for Plaintiff Vestina Ross*